IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Jamar A. Cannon,
    Plaintiff,

v.                                                  1:16cv359 (LMB/TCB)

Edward Hull, et al.,
    Defendants.

## MEMORANDUM OPINION

Jamar A. Cannon filed this pro se civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants violated his constitutional rights at Northern Neck Regional Jail. Dkt. No. 1. Plaintiff has applied to proceed in forma pauperis in this action. Dkt. No. 2. By Order dated May 12, 2016, plaintiff was directed to particularize and amend his complaint, to sign and complete a Consent Form, and to complete an exhaustion affidavit. Dkt. No. 3. Plaintiff requested additional time to comply with that Order, and on June 3, 2016, he was granted an additional thirty (30) days in which to file a particularized and amended complaint. Dkt. Nos. 6-8. Plaintiff filed an amended complaint on June 9, 2016. Dkt. No. 10. Upon review of plaintiff's amended complaint, the claims plaintiff alleges which arise under the Seventh and Thirteenth Amendments and the Prison Rape Elimination Act (PREA), as well as the claims against Nurse Barns, will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.[1]

---

[1] Section 1915A provides:

(a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

In addition, by letter filed on May 22, 2016, plaintiff stated that he needs "help either threw [sic] counsel or some help to get the US Constitution laws, civil rights of a prisoner/US citizen and the Amendments of the United States set forth by Congress." Dkt. No. 6. Construed liberally, plaintiff's letter appears to be a Motion to Appoint Counsel. A court may request an attorney to represent an indigent plaintiff proceeding in forma pauperis, 28 U.S.C. § 1915(e)(1); however, the Fourth Circuit has limited the appointment of counsel to cases where "exceptional circumstances" exist, such as cases with particularly complex factual and legal issues or with a litigant who is unable to represent himself adequately. Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984). It is unnecessary at this time to appoint counsel for plaintiff as he has failed to demonstrate the existence of "exceptional circumstances" that would warrant appointment of counsel. To date, plaintiff has ably filed his complaint, amended complaint, and motions, and has demonstrated comprehension of the procedures and laws of this court. Thus, plaintiff's Motion to Appoint Counsel will be denied without prejudice to renewal at a later stage of the proceedings, if appropriate.

In a letter filed on July 5, 2016, plaintiff asks for "a copy of everything filed in this case or a docket sheet, and I would like to request a discovery motion of anything pertaining to this matter." Dkt. No. 13. By Order dated June 3, 2016, a similar request was denied because parties are not entitled to free copies of pleadings or other documents unless a specific need is established.

---

(b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
    (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
    (2) seeks monetary relief from a defendant who is immune from such action which plaintiff asserts is a federal offense.

2

Plaintiff has not established such a need. As was ordered in the June 3, 2016 Order, the Clerk will be instructed to provide plaintiff with a copy of the docket sheet. Lastly, plaintiff's Motion for Discovery will be denied as premature because the complaint has not yet been served on all defendants. Plaintiff may renew this request after defendants respond to the amended complaint, if discovery is appropriate.

## I.

Throughout his amended complaint, plaintiff variously asserts that his rights under the First, Sixth, Seventh, Eighth, Thirteenth, and Fourteenth Amendments were violated, as well as his rights under the PREA. In "Claim #1," plaintiff alleges that he was assaulted by Officer Lubeke. Amend. Compl. at § VI. Specifically, plaintiff states that, on July 18, 2012, he was handcuffed behind his back and placed in shackles (per his housing unit's policy) by Officer Stephan before being escorted to meet his attorney. Id. As he was about to enter the "Attorney booths" he passed Officer Lubeke, who was on a ladder changing light bulbs. Id. The two exchanged words and then Officer Lubeke allegedly "jumped off the [ladder] and proceeded to[] bull rush [plaintiff] with rage and hurtful/forceful intent." Id. Plaintiff asked Officer Stephan for help, but he "did nothing, said nothing." Id. Officer Lubeke then allegedly "grabbed the locks of [plaintiff's] dreaded hair and proceeded to slam [plaintiff's] head and body from wall to wall all while [plaintiff was] screaming in pain stop, your [sic] hurting me get him Stephan." Id. Plaintiff states that he had blood running down his neck and out of his ears, and that Officer Lubeke pulled the root of his hair out of his head, causing it to bleed. Id. After speaking with Sergeant Berry, plaintiff was taken to the medical unit where Nurse Barns cleaned his wounds and

filled out a report regarding plaintiff's injuries.[2] Id. Plaintiff attempted to file criminal charges, but was "told by Captain Hickey and Superintendent Hull [that he had] no right to file charges" and that it was up to Superintendent Hull to do so. Id. Plaintiff alleges that, instead, he was charged with assaulting Officer Lubeke, even though he was in handcuffs and shackles at the time, and was placed in solitary confinement. Id. Plaintiff asserts that his only remedy was to file this civil suit. Id. Plaintiff also states that all of the defendants are "in on [this] cover up" and that they each had a duty to report Officer Lubeke's actions because they had "knowledge of a crime." Id. Plaintiff has suffered "emotional stress, physical [and] mental problems, permanent injuries [and] hair loss" and he "fear[s] for [his] life here at 'NNJR' because if [officers] and superiors cover up vicious, sadistic and [sic] assaults/attempted murder on inmates imagine what else this place will allow and cover up." Id.

In "Claim #2," plaintiff alleges that, at the direction of Superintendent Hull, Major Back, and Captain Turner, he was forced to take showers while handcuffed and shackled, for approximately 30 to 49 days, "like a slave and less of a human being." Id. More specifically, plaintiff was forced to get "butt naked" in his cell, after which he would be cuffed and shackled, and then he would "proceed to the shower," walking past other inmates "with all [his] private parts exposed." Id. Some of the officers escorting plaintiff to his showers were females. Id. Officers and inmates would make comments and laugh at and taunt plaintiff as he walked to the shower naked. Id. In addition, the handcuffs and shackles caused plaintiff "mental, emotional and physical stress pains and swellings of the wrist, and ankles." Id. At some point, Superintendent Hull modified this procedure so that plaintiff only wore handcuffs in the shower.

---

[2] This report was attached to plaintiff's original complaint and states that plaintiff had a back strain as well as two small scratches on his neck that were still bleeding.

Id. Plaintiff asserts that he "shouldn't be treated like a slave or murder" because he "did nothing to warrant this cruel [and] unusual punishment and this is not a legal punishment to be brought upon any human being incarcerated period." Id. Finally, plaintiff alleges that Major Back "endorses slavery and slavery tactics in dealing with African-Americans and others of different cultures other than caucassion [sic]." Id.

In "Claim #3" plaintiff alleges that he was forced to eat food in the poor conditions of the gym and was then placed in solitary confinement, at the direction of Major Back, for refusing to eat in the gym and complaining about the conditions. Id. Specifically, plaintiff states that the gym has "no ventilation system, no running water (because the bathroom stays locked), urine in the water fountain ... blood on the floor and walls and filth." Id. He also states that the cell he was placed in had "no mirror, no sprinkler system, urine/feces on the walls, roof leaking when it rains, etc." Id. Plaintiff "endured these harsh conditions for over 30 days and became mentally [and] emotionally exhausted [and] stressed out." Id. He was eventually moved to general population. Id.

In "Claim #4" plaintiff states that he was not allowed to call his attorney. Id. On October 15, 2015, Sergeant Berry told plaintiff he could not "call and talk to [his] attorney, but she was authorized by Captain Darryl Turner to come to [plaintiff's] cell and ask [him] what [he] wanted to say and she should relay the messages back and forth." Id. Major Back gave "another order to [Captain] Turner denying [plaintiff] direct communication to [his] attorney." Id. In addition, Supervisor Hull knew his subordinates were taking these actions, but he did not intervene;" rather, he "acted as [if] nothing happened or he didn't know." Id.

In "Claim #5" plaintiff alleges that he has "been forced to be indigent" because, at the direction of Major Back, his inmate account was frozen since September 30, 2015, preventing him from being able to make non-legal calls or buy food and hygiene products. Id. This has caused plaintiff to lose weight because of the stress and lack of food. Id. Plaintiff alleges that, although the jail employees, including Director Lewis, have stated that they have evidence that the money in his account was related to illegal activity, he has been sanctioned despite not being charged with any criminal activity or institutional infraction. Id. Plaintiff states that he is not even allowed to access money deposited by family and friends. Id. Plaintiff asserts that he is "being treated differently than other prisoners/being denied phone privileges, access to my families [sic] money sent for hygiene, phone [and] commissary purposes, loss of contact with family [and] kids etc." Id. He also claims that Major Back "has shown racist [sic] and hatred towards plaintiff by freezing inmate[']s account on assumptions and giving vague, false and no fact backed excuse other than a case by case base [sic]." Id. Superintendent Hull stated that this "will continue until [plaintiff's] release from this facility." Id.

Plaintiff names Superintendent Edward Hull, Major Phyllis Back, Chief of Security Darryl Turner, Captain Hickey, D. Lubeke, Officer Stephan, Sergeant Berry, Director of Inmate Services Michelle Lewis, and Nurse Barns as defendants in this case, and he seeks monetary and equitable relief. Id. §§ I, V.

## II.

To state a claim under § 1915A(b)(1), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Iqbal, 556 U.S. at 66; however, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard, id. at 678, and a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 55.

### III.

Plaintiff's claims that his rights under the Seventh Amendment were violated must be dismissed for failure to state a claim. The Seventh Amendment states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." Plaintiff's allegations in no way implicate any right granted by the Seventh Amendment. Thus, his claims arising under the Seventh Amendment will be dismissed under § 1915A.

Similarly, plaintiff's claims arising under the Thirteenth Amendment must be dismissed for failure to state a claim. The Thirteenth Amendment, which prohibits involuntary servitude, is inapposite to the substance of plaintiff's complaint. Plaintiff asserts that he was forced to wear handcuffs and shackles while showering "like a slave and less of a human being;" however, "'[w]hen a person is duly tried, convicted and sentenced in accordance with law, no issue of peonage or involuntary servitude arises.'" Wendt v. Lynaugh, 841 F.2d 619, 620 (5th Cir. 1988) (quoting Draper v. Rhay, 315 F.2d 193 (9th Cir.), cert. denied, 375 U.S. 915 (1963)). Plaintiff

makes no allegations that he was improperly tried, convicted, or sentenced; thus, his Thirteenth Amendment claims must be dismissed pursuant to § 1915A.

Plaintiff's claims that his rights under the PREA were violated must be dismissed for failure to state a claim because prisoners do not have a right to sue under the PREA. See De'lonta v. Clarke, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) ("Nothing in the PREA suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act"), aff'd sub nom. De'Lonta v. Pruitt, 548 F. App'x 938 (4th Cir. 2013). Thus, plaintiff's claims that his rights under the Seventh Amendment, Thirteenth Amendment, and the PREA were violated are dismissed pursuant to § 1915A for failure to state a claim. Plaintiff's claims arising under the First, Sixth, Eighth, and Fourteenth Amendments remain.

Defendant Nurse Barns will also be dismissed from this matter as plaintiff failed to state a claim against this defendant. The only allegation plaintiff asserts against Nurse Barnes is the conclusory statement that Nurse Barns had a duty to report Officer Lubeke's actions because it constituted "knowledge of a crime." As this is insufficient to state a cause of action against Nurse Barns, this defendant will be dismissed for failure to state a claim.

### IV.

As noted above, plaintiff submitted an application to proceed in forma pauperis and has consented to pay an initial filing fee and to make subsequent payments, pursuant to 28 U.S.C. § 1915(b), until he has paid the full $350.00 filing fee. Plaintiff's institution has supplied information on plaintiff's inmate account reflecting that, for the past six months, plaintiff had an average monthly deposit of $0.00, an average monthly balance of $356.98, and a balance of negative $23.00 at the time of inquiry. Therefore, plaintiff will be required to pay a partial filing

fee of $71.39, which is twenty percent (20%) of the greater of the average monthly deposits or balance for the last six months preceding filing of this complaint. See 28 U.S.C. § 1915(b)(1). After submitting his initial filing fee, plaintiff will be required monthly to remit to the Clerk twenty percent (20%) of any income into the plaintiff's inmate account, if that income causes his inmate account balance to exceed $10.00. 28 U.S.C. § 1915(b)(2). This requirement shall continue until the full filing fee has been paid, even after this civil action is resolved or dismissed.

V.

For the above stated reasons, the claims plaintiff alleges which arise under the Seventh and Thirteenth Amendments and the PREA, as well as the claims against Nurse Barns, will be dismissed pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim. Plaintiff's Motion to Appoint Counsel and Motion for Discovery will be denied without prejudice. All remaining defendants will be served. An appropriate Order shall issue.

Entered this 21st day of July 2016.

Alexandria, Virginia

/s/ Leonie M. Brinkema
United States District Judge

9