IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| Jamar A. Cannon, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16cv359 (LMB/TCB) |
| | ) | |
| Edward Hull, et al., | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION

Jamar A. Cannon filed this pro se civil rights action, pursuant to 42 U.S.C. § 1983, alleging that defendants Superintendent Edward Hull, Major Phyllis Back, Chief of Security Darryl Turner, Captain Hickey, Officer D. Lubeke, Officer Stephan, Sergeant Berry, and Director Michelle Lewis violated his constitutional rights at the Northern Neck Regional Jail (NNRJ). Defendants have filed a Motion for Summary Judgment as well as memoranda of law with supporting exhibits. [Dkt. Nos. 29, 30.] After having been granted an extension of time to respond, plaintiff has responded to defendants' motion [Dkt. No. 45] and this matter is now ripe for adjudication. For the reasons discussed below, defendants' Motion for Summary Judgment will be granted as to Claims One through Four and these claims will be dismissed, with prejudice. As to Claim Five, defendants will be directed to provide supplemental briefing. Finally, plaintiff's pending discovery motions will be denied and all other pending motions will be denied as moot.

I. Background

Plaintiff was transferred to the NNRJ by the United States Marshal Service in June 2011. Supt. Hull Aff., ¶ 5. During this time, plaintiff has been assigned to various forms of restrictive housing, including administrative segregation and, at times, the more restrictive punitive segregation. Id. ¶ 8. His administrative records from NNRJ demonstrate that plaintiff is "[u]nable to adapt to life in general population" and has routinely been placed in administrative

segregation for the "safety and security of the institution." Defs. SJ Mot. at Ex. 1(a), 10, 11, 12, 13, 14, 15, 16, 17. The bases for these conclusions are well documented.

In September 2011, plaintiff met with the prison therapist who wrote that plaintiff was having auditory hallucinations and making veiled threats. Id. at 20. On June 14, 2013, after plaintiff was moved to E-pod, he was placed on suicide watch after he became angry about the transfer and threatened to kill himself. Id. at 21. In September 2015, officers discovered a pocket knife and two pens hidden in plaintiff's cell and he was cited with disobeying a direct order, possession of a weapon, and possession of contraband. Id. at 26.

Plaintiff was placed on suicide watch a second time on June 24, 2016 after he threatened to kill himself based on persistent complaints about his food. Id. at 22. The evening before, plaintiff began making suicidal threats and resisted attempts to transport him for suicide watch: he covered the window to his cell, refused to allow officers to handcuff him, jammed his cell door shut, and ran out of his cell as the officers entered behind protective shields. Id. at 31. When he was finally taken to the medical wing, plaintiff "threatened to harm himself and damage jail property" and was placed in a restraint chair for several hours. Id. at 18.

Four days later, on June 28, 2016, plaintiff asked to see the therapist again and told him he planned to act out if he was not provided with his grandmother's obituary, to which he had previously been denied access. Id. at 23. The following month, he met with the therapist again complaining of "anxiety with increased energy, increased anger/agitation, . . . decreased sleep, and . . . a lot of psychomotor movements." Id. at 24. Plaintiff agreed to start taking Wellbutrin, an antidepressant. Id.

Plaintiff asserts five separate claims in his amended complaint. The disputed and undisputed facts, as they relate to each claim, are as follows.

2

**A. Claim One**

In Claim One, plaintiff alleges that Officer Lubeke used excessive force. Amend. Compl. at § IV. Specifically, plaintiff alleges that on July 18, 2012, he was handcuffed behind his back and placed in shackles (per his housing unit's policy) by Officer Stephan before being escorted to meet his attorney. Id. As he was about to enter the "Attorney booths" he passed Officer Lubeke, the two exchanged words, and Officer Lubeke "proceeded to[] bull rush [plaintiff] with rage and hurtful/forceful intent." Id. Officer Lubeke then "grabbed the locks of [plaintiff's] dreaded hair and proceeded to slam [plaintiff's] head and body from wall to wall all while [plaintiff was] screaming in pain stop, your [sic] hurting me get him Stephan." Id. Plaintiff claims that he had blood running down his neck and out of his ears, and that Officer Lubeke pulled the root of his hair out of his head, causing it to bleed. Id. Plaintiff attempted to file criminal charges, but was "told by Captain Hickey and Superintendent Hull [that he had] no right to file charges" and that it was up to Superintendent Hull to do so. Id. Finally, plaintiff claims that, rather than officer Lubeke being charged with assault, plaintiff was thrown into solitary confinement for assaulting Officer Lubeke. Id. Defendants do not dispute any of these allegations, but as discussed below, they argue that this claim is time-barred.

**B. Claim Two**

In Claim Two plaintiff alleges he suffered cruel and unusual punishment at the direction of Superintendent Hull, Major Back, and Captain Turner, when he was forced to take showers while handcuffed and shackled "like a slave and less of a human being" during a 30-49 day period. Id.

The following facts are undisputed. While incarcerated at NNRJ, plaintiff has been assigned to restricted housing due to his inability to adapt to and maintain life in NNRJ's general population. Amend. Compl.; Defs. SJ Mot. at Ex. 1. While plaintiff was in punitive segregation

3

he was allowed to leave his cell on Mondays and Fridays to take a shower, but he was placed in handcuffs and shackles when transported to the shower areas. Id.; Defs. SJ Mot. at Ex. 3. On October 20, 2015, and October 28, 2015, plaintiff filed grievances related to the requirement that he wear handcuffs and shackles in the shower. Defs. SJ Mot. at Ex. 1(b). Plaintiff was told that "the jail has taken the necessary security measures in regards to [his] recent behavior" including his "disciplinary charge and statements in reference to threats to staff." Id. Plaintiff appealed the grievance to which Major Back responded that plaintiff's "position on how [his] one hour out of [his] cell and [his] shower should be provided is self-perceived, partially informed and consequently [illegible] and inaccurate statement." Id. Plaintiff appealed again and on November 23, 2015, Superintendent Hull responded that he "modified this requirement." Amend. Compl. According to plaintiff, that modification was that he only wore handcuffs in the shower. Id.

It remains disputed as to whether plaintiff was taken to the shower naked and why plaintiff was treated the way he was. Plaintiff alleges that he was forced to get "butt naked" in his cell, after which he would be cuffed and shackled, and then he would "proceed to the shower," walking past other inmates "with all [his] private parts exposed." Id. Some officers and inmates would make comments and laugh at and taunt plaintiff as he walked to the shower naked. Id. In addition, the handcuffs and shackles caused plaintiff "mental, emotional and physical stress pains and swellings of the wrist, and ankles." Id. Plaintiff asserts that he "did nothing to warrant this cruel [and] unusual punishment and this is not a legal punishment to be brought upon any human being incarcerated period." Id. More specifically, plaintiff states that he had no disciplinary charges filed against him from October 2014 to September 2015, and he was employed in a position of trust as a barber at NNRJ. Pl. SJ Opp. at 4. Finally, plaintiff alleges that Major Back

"endorses slavery and slavery tactics in dealing with African-Americans and others of different cultures other than caucassion [sic]." Amend. Compl. at § IV.

Defendants, on the other hand, state that plaintiff was never "escorted, while naked, to the showers." Defs. SJ Mot. at Ex. 1(a), 3. Further, plaintiff's contemporaneously filed grievance forms, dated October 10, October 20, October 28 and October 30, 2015 complain about the handcuffs and make no mention of being forced to walk to the showers naked. Defs. SJ Mot. at Ex. 1(b), 2-5. In addition, defendants assert that, for the majority of his time at NNRJ, plaintiff was either in administrative segregation or punitive segregation because he was "unable to adapt" to the general prison population. Id. Defendants assert that the restrictions placed on plaintiff were a result of his ongoing history of threatening to damage jail property and/or to harm himself or others, conducting illegal activity, inciting riots, and generally being combative, disrespectful or threatening to jail staff." Id. at Ex. 2.

To support this proposition, defendants attached reports from plaintiff's jail record showing that he reported hearing command voices and "made a few veiled threats" to a therapist on September 16, 2011; an inmate suicide assessment was performed on plaintiff on June 14, 2013; on September 30, 2015, plaintiff was found to have contraband in his cell and he was taken to administrative segregation; he was charged with making "verbal threats to do bodily harm to officers" on December 18, 2015; and that he was pepper sprayed for failing to obey orders after threatening to kill himself and covering his cell window, and he was then placed in a restraint chair for "threatening to harm himself and damage jail property" on June 23, 2016. Id. at Ex. 1(a)

**C. Claim Three**

In Claim Three, plaintiff asserts a claim of cruel and unusual punishment based on conditions of confinement related to being forced to eat food in the poor conditions of the gym and

5

the conditions of solitary confinement in which plaintiff was placed for refusing to eat in the gym. It is undisputed that, on June 17, 2015, plaintiff and the other inmates in his pod had to eat lunch in the gym while their pod was undergoing maintenance.  Amend. Compl; Defs. SJ Mot. at Ex. 1(c). An incident report from that day reflects that, after the "C pod inmates which [sic] were in the gym at the time for maintenance work, refused their lunch trays" prison officials placed chairs in the gym and opened the bathroom doors so that the inmates could wash their hands.  Defs. SJ Mot. at Ex. 1(c).  "Officer Campbell offered them their trays again and they refused."  Id.  Officer Burrell went to the gym to offer the inmates their trays, at which point plaintiff stated "'we have the right to eat in sanitary conditions, get the major in here.'"  Id.  Captain Turner ordered that plaintiff be removed from the gym and taken to segregation.  Id.

Plaintiff alleges that the gym has "no ventilation system, no running water (because the bathroom stays locked), urine in the water fountain ... blood on the floor and walls and filth." Amend. Compl. at § IV.  He also states that the cell he was placed in once in solitary confinement had "no mirror, no sprinkler system, urine/feces on the walls, roof leaking when it rains, etc."  Id. Plaintiff "endured these harsh conditions for over 30 days and became mentally [and] emotionally exhausted [and] stressed out."  Id.  He was eventually moved to general population.  Id.

Defendants claim that plaintiff was "attempt[ing] to incite riotous behavior by refusing to accept his lunch tray in the gym.  Plaintiff was removed from the gym at that time and the other inmates had no issue taking their lunch in the gym area."  Defs. SJ Mot.

### D. Claim Four

In Claim Four plaintiff asserts that he was not allowed to call his attorney.  Amend. Compl. at § IV.  The facts related to this claim are almost entirely in dispute.  Plaintiff claims

that, on October 15, 2015, Sergeant Berry told him he could not "call and talk to [his] attorney, but she was authorized by Captain Darryl Turner to come to [plaintiff's] cell and ask [him] what [he] wanted to say and she should relay the messages back and forth." Amend. Compl. Major Back allegedly gave "another order to [Captain] Turner denying [plaintiff] direct communication to [his] attorney." Id. In addition, plaintiff asserts, Supervisor Hull knew his subordinates were taking these actions, but he did not intervene;" rather, he "acted as [if] nothing happened or he didn't know." Id. Defendants respond that, while plaintiff was in administrative segregation he had a phone in his cell, and therefore had unlimited ability to make phone calls, and that when plaintiff was in punitive segregation, he was able to make phone calls on Mondays and Fridays. Defs. SJ Mot. at Ex. 2.

The record shows that, on June 8, 2013, plaintiff filed an inmate request form asking to speak with an attorney. Plaintiff's request was approved by Captain Turner on June 10, 2013. Id. at Ex. 1(d). Two years later, on May 13, 2015, plaintiff filed an inmate request form asking for "a lawyer phone call as soon as possible. It is very important." Id. The response from Major Back was that "NNRJ does not provide phone calls outside the provisions of the inmate phone system. You may want to consider calling collect or writing to those you'd like to communicate with." Id.

In response to a July 23, 2015 inmate request form Major Back stated "Your tablet privileges have been rescinded indefinitely. Commissary order can be made manually be [sic] submitting an order to the commissary clerk. Requests for attorney calls are to be directed to me with the name and number of your attorney." Id. On October 15, 2015, plaintiff filed an inmate request stating that he "would like in writing that [NNRJ is] refusing to let [him] speak with [his] lawyer personally, which constitutes a breach in privacy …. Relaying messages thru staff to [his]

7

lawyer is clearly not client, attorney privilege [sic]." Amend. Compl. Major Back's response was "noted." Id.

On October 22, 2015, plaintiff filed a grievance in which he states that Sergeant Berry, per orders from Captain Turner and Major Back, told plaintiff that he could not speak directly to his attorney, but rather, that plaintiff could communicate with his attorney through Sergeant Berry. Defs. SJ Mot. at Ex. 1(d) Captain Turner responded by stating that plaintiff would be allowed to use the phone to contact his attorney on Monday and Friday when he was out of his cell for his shower. Id. Plaintiff was also told that he could submit a request to use the phone at other times. Id. Plaintiff appealed this decision and Major Back denied the appeal because "neither [plaintiff's] constitutional rights nor [his] legal rights of attorney client confidentiality have been violated." Id. Plaintiff appealed again and Superintendent Hull stated that plaintiff could call his attorney. Id.

Plaintiff filed an inmate request form on October 31, 2015, stating that he needed his "pin #" to work in order to call his attorney. Id. Captain Turner responded that he "advise[d] Ms. Dunaway of this and she assure[d] [Captain Turner] that [plaintiff's] pin # will work." Id. On November 2, 2015, plaintiff filed another inmate request regarding his inability to use his pin number to make phone calls. Id. Captain Turner responded on November 4, 2015, that, due to suspected illegal activity, plaintiff's funds "will not be allowed to be used for phone privileges or commissary until further notice. [Plaintiff] will be allowed to make attorney calls on [his] days out on punitive (Monday [and] Friday)." Id. On November 5, 2015, plaintiff filed a grievance asking why his phone pin number was not working and Captain Turner replied that plaintiff's phone privileges had been suspended "except legal calls." Amend. Compl. On November 10, 2015, plaintiff filed another grievance related to being able to speak with his attorney and Captain

Turner responded that he was unsure what plaintiff's claims were "since [he] personally advised several of [his] supervisors to give [plaintiff] legal calls, even on the weekends requested by [plaintiff's] attorney." Defs. SJ Mot. at Ex. 1(d).

### E. Claim Five

In Claim Five plaintiff alleges that he has "been forced to be indigent" because, at the direction of Major Back, his inmate account has been frozen since September 30, 2015, preventing him from being able to make non-legal calls or buy food and hygiene products. Amend. Compl. at § IV. It is undisputed that, sometime in September or October 2015, plaintiff's inmate account was frozen and plaintiff was denied access to the funds in his account. Id.; Defs. SJ Mot. at Ex. 2. It is also undisputed that plaintiff has been told that he can either have the money in his inmate account given to his attorney or that he will be given access to the money when he is no longer incarcerated. Id.; Defs. SJ Mot. at Ex. 2.

Plaintiff alleges that, although the jail employees have stated that they have evidence that the money in his account is related to illegal activity, his account has been frozen despite plaintiff not being charged with any criminal activity or institutional infraction. Id. Plaintiff asserts that he has "never been involved in any illegal activity nor gambling ... at NNRJ," Pl. SJ Opp. at 11, and is "being treated differently than other prisoners/being denied phone privileges, access to my families [sic] money sent for hygiene, phone [and] commissary purposes, loss of contact with family [and] kids etc." Amend. Compl at § IV. He also claims that Major Back "has shown racist [sic] and hatred towards plaintiff by freezing inmate[']s account on assumptions and giving vague, false and no fact backed excuse other than a case by case base [sic]." Id.

Defendants do not dispute that plaintiff's account has been frozen because plaintiff was being investigated for "strongly suspected involvement in a criminal enterprise," but explain that

plaintiff has been provided hygiene products and basic necessities while his account has been frozen. Defs. SJ Mot. at Ex. 2.

On October 15, 2016, plaintiff filed an inmate request asking that his money be released to his attorney, to which Superintendent Hull responded that plaintiff's "attorney can help [him] with the request. Actually we have [plaintiff] recorded discussing ... gambling so [plaintiff's] account will remain frozen." Id. at Ex. 1(e). In response to an appeal of a grievance, Superintendent Hull stated that plaintiff has "no 'right' to commissary and [plaintiff has] to date abused the privilege. [Plaintiff] can send the money home or to [his] attorney. [His] choice or I will send the funds with [plaintiff] when [he leaves]." Id. On April 16, 2016, plaintiff filed an inmate request form and in response he was provided socks, boxers, and t-shirts. Id. On May 17, 2016, plaintiff submitted an inmate request asking why his account, which had been frozen for several months, had a negative balance. Id. Captain Turner stated in his May 18 response that he had "attempted to correct the issue. However, the company that controls the ATM transactions (Tech Friends) has frozen this account due to fraudulent transaction attempts. If you wish to have your family contact them, the number is 866-033-6386. Again, the jail has no control over this matter." Id. at 10. This conclusion was confirmed by an incident report by Diane Dunaway on May 18, 2016, which said that NNRJ tech support had confirmed that plaintiff's account "ha[d] been 'red flagged' because of fraudulent transaction on [his] card [number]." Id. at 8.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Citrate, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

#### A. Claim One

Because there is no federal statute of limitations for § 1983 claims, the state limitations period which governs personal injury actions is applied. See Wilson v. Garcia, 471 U.S. 261, 280

(1985). Virginia has a two-year statute of limitations for personal injury claims under Virginia Code. § 8.01-243(A), which is the applicable statute of limitations in this action. See Shelton v. Angelone, 148 F. Supp. 2d 670, 677 (W.D. Va. 2001), aff'd, 49 Fed. Appx. 451 (4th Cir. Oct. 30, 2002) (unpublished opinion). Additionally, federal courts are "obligated not only to apply the analogous state statute of limitations to federal constitutional claims brought under § 1983, but also to apply the State's rule for tolling that statute of limitations." Scoggins v. Douglas, 760 F.2d 535, 537 (4th Cir. 1985) (citing Board of Regents v. Tomanio, 446 U.S. 478, 484-86 (1980)); see also Hardin v. Straub, 490 U.S. 536, 538 (1989) ("Courts thus should not unravel state limitations rules unless their full application would defeat the goals of the federal statute at issue").

Although the limitation period is borrowed from state law, "the question of when a cause of action accrues under 42 U.S.C. § 1983 remains one of federal law." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975)). Causes of action accrue under federal law when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Id. (citing United States v. Kubrick, 444 U.S. 111, 122-24(1979)).

Plaintiff's cause of action related to Officer Lubeke's alleged assault accrued on July 18, 2012; however, the instant petition was not filed until March 22, 2016, twenty (20) months after the two year statute of limitations had run. Plaintiff argues that "an attempted murder or assault with the intent to kill and or [sic] malicious wounding on the plaintiff by D. Lubeke carries a longer statute of limitations than assault and I was more than assaulted with battery [sic] ...." Pl. SJ Opp. at 1. Plaintiff appears to be mistaking the statute of limitations for the criminal actions of assault and attempted murder with the statute of limitations for a personal injury action, which is the applicable statute of limitations. Plaintiff also states that he was prevented from filing a

criminal complaint against Officer Lubeke. Id. To the extent this is an argument by plaintiff that the statute of limitations should be tolled, plaintiff does not allege that he was prevented from filing a civil claim against Officer Lubeke. Accordingly, plaintiff has not established that he is entitled to tolling of the statute of limitations and Claim One will be dismissed as time barred.

### B. Claim Two

To establish a claim for cruel and unusual punishment due to conditions of confinement, a plaintiff must allege facts sufficient to show (1) an objectively serious deprivation of a basic human need, that is, one causing serious physical or emotional injury, and (2) that prison officials were deliberately indifferent to that need. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Wilson v. Seiter, 501 U.S. 294, 198 (1991). To meet the first prong, Plaintiff must allege facts sufficient to show that the condition complained of was a "sufficiently serious" deprivation of a basic human need. Id. Only extreme deprivations will make out an Eighth Amendment claim, and it is Plaintiff's burden to allege facts sufficient to show that the risk from the conditions of his confinement was so grave that it violated contemporary notions of decency and resulted in serious or significant physical or emotional injury. Hudson v. McMillian, 503 U.S. 1, 8 (1992); Strickler v. Waters, 989 F.2d 1375, 1379-81 (4th Cir. 1993). To meet the second prong, Plaintiff must allege facts sufficient to show that the defendants knew of circumstances from which an inference could be drawn that a "substantial risk of serious harm" was posed to plaintiff's health and safety, that they drew that inference, and then disregarded the risk posed. Farmer, 511 U.S. at 837. "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981).

The lack of any reference in his contemporaneous grievances to being naked, and the affidavits of the defendants denying that plaintiff was naked, undercut any material dispute as to this issue. That defendants needed to place plaintiff in restraints when he was being escorted to the shower, is supported by plaintiff's uncontested disciplinary record showing that he made threats to himself, as well as to other inmates and staff at NNRJ during his time there. Plaintiff argues that it is "against the law" and "an act of slavery" for him to be handcuffed while showering, and that defendants "lied" in their affidavits and, in fact, acted with deliberate indifference; however, in light of the evidence in the record that plaintiff posed a security risk to himself and others, plaintiff's "wholly speculative assertions will not suffice" to defeat summary judgment. Ross, 759 F.2d at 364. Accordingly, the undisputed evidence shows that defendants were not deliberately indifferent in how they handled plaintiff's showers and defendant's Motion for Summary Judgment will be granted as to Claim Two.

### C. Claim Three

Although there are facts in dispute regarding the condition of the gym when plaintiff was forced to eat lunch there one day, these facts are not material because he has failed to show that the condition he complains of resulted in serious or significant physical or emotional injury. Plaintiff's allegations and arguments go to the conditions of the gym, but he has not shown that he suffered any mental or physical injury as a result of eating in these conditions for one day. Even if the conditions in the gym were "harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347. Accordingly, the undisputed evidence shows that plaintiff did not suffer a serious or significant physical or emotional injury as a result of having to eat lunch in the gym.

As to plaintiff's claims regarding the conditions of solitary confinement, his conclusory allegations that he "became mentally [and] emotionally exhausted [and] stressed out" are insufficient to establish "that he has sustained any serious or significant physical or emotional injury as a result of these conditions." Strickler, 989 F.2d at 1381. In particular, he has provided no evidence such as his medical records to support this claim. Therefore, defendants' Motion for Summary Judgment will be granted as to Claim Three.

**D. Claim Four**

Inmates have a right to meaningful access to the courts, which requires that individuals acting under color of state law cannot hinder an inmate in his efforts to pursue a legal claim. Bounds v. Smith, 430 U.S. 817, 822 (1977)); Lewis v. Casey, 518 U.S. 343 (1996). To state a claim for denial of access to the courts, plaintiff must establish that he suffered an "actual injury or specific harm." Hause v. Vaught, 993 F.2d 1079, 1084-85 (4th Cir. 1993). To make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; instead, he must identify with specificity an actual injury resulting from official conduct. Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996). Actual injury requires the inmate "to demonstrate that his nonfrivolous, post-conviction or civil rights legal claim has been frustrated or impeded." Jackson v. Wiley, 352 F. Supp. 2d 666, 679-80 (E.D. Va. 2004).

Although plaintiff has created a factual dispute as to whether or not he was able to call his attorney, this disputed fact is not material as plaintiff has not established that he suffered a harm as a result of not being able to contact his attorney because he has not identified any legal matter that was pending at the time or otherwise explained why he needed to contact his attorney. See Vanexass v. Rosser, 875 F.2d 317 (4th Cir. 1989) (affirming dismissal of "claim of denial of access to legal materials and long distance phone calls to his attorney ... because


[plaintiff] does not show that actual injury resulted") (citing Magee v. Waters, 810 F.2d 451). Accordingly, plaintiff has not established that he suffered harm by not being able to call his attorney and the Motion for Summary Judgment as to Claim Four will be granted.

### E. Claim Five

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving an individual of life, liberty, or property without due process of law. A prisoner's liberty interest is generally limited to being free from conditions that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 484 (1995). Specifically, a prisoner has protection against the arbitrary imposition of punishment by prison officials. See Wolff v. McDonnell, 418 U.S. 539, 558 (1974).

Defendants argue that plaintiff is not entitled to relief under § 1983 because the prison system provides postdeprivation remedies. In support of this argument, they cite Hudson v. Palmer, 468 U.S. 517 (1984), and its progeny. But, this line of cases deals with "unauthorized intentional deprivation of property," Hudson, 468 U.S. at 533, and defendants do not explain why an account freeze instituted in response to gambling suspicions constitutes an unauthorized deprivation. To the contrary, it is reasonable to infer from plaintiff's allegations that he is claiming that the freezing of his account was authorized, which would make any postdeprivation remedies irrelevant. See Lawrence v. Swanson Inmate Commissary Servs., 151 F.3d 1029 (4th Cir. 1998) (holding that "the availability of Parratt-type postdeprivation remedies is irrelevant" to claim where money was allegedly taken from a prisoner account "pursuant to established policies") (citing Zinermon v. Burch, 494 U.S. 113, 136-38 (1990)).

16

As it stands, the record does not provide sufficient information regarding the freezing of plaintiff's funds. Further information is necessary to determine whether, as a matter of law, any postdeprivation remedies afforded to plaintiff are relevant and whether plaintiff was afforded due process. This case is remanded to the defendants as to Claim Five and defense counsel is directed to file supplemental briefing within fourteen (14) days documenting:

- the NNRJ's policy regarding inmate accounts, the basis upon which accounts may be frozen, and any grievance procedures regarding account issues.
- the dates during which plaintiff's account was frozen and its current status.
- the nature of the NNRJ's agreement with the third-party provider Tech Friends and the authority that Tech Friends has to unilaterally freeze an inmate's account.
- to the extent that plaintiff's account remains frozen at the instruction of the NNRJ, the evidentiary basis for this decision and plaintiff's remedy for challenging this decision.

### IV. Supervisory Liability and Qualified Immunity

For the reasons stated above, Claims One through Four will be dismissed and the issues of supervisory liability and qualified immunity need not be addressed with regards to those claims. As to supervisory liability and qualified immunity with regards to Claim Five, a ruling on these issues will be made after defendants file a supplemental motion for summary judgment, to which plaintiff will have an opportunity to respond.

### V. Pending Motions

#### A. Discovery Motions

On October 4, 2016, plaintiff submitted pleadings respectively titled as a "Motion for Subpoena of Inmate Phone Records from September 30, 2015 to September 30, 2016," a

"Motion/Subpoena of Inmate Account from July 30, 2015 to September 30, 2016," a "Subpoena Motion for Inmate Disciplinary Record from October 2014 when I was a New Booking From Another Jail Till September 30, 2015," and a "Motion/Subpoena for Video/Camera Footage of the Attempted Murder on Jamar A. Cannon (2012) and Video Footage of Jamar A. Cannon While in E-Pod and N-Pod." [Dkt. Nos. 35-38.] In response, defendants filed a Motion to Quash or Stay Discovery, requesting that plaintiff's discovery requests be quashed or stayed pending the outcome of defendants' Motion for Summary Judgment. [Dkt. No. 40.] Plaintiff responded with a "Motion to Challenge Defendants' Motion to Quash Subpoenas of Necessary Documents for Plaintiff". [Dkt. No. 44.]

Plaintiff's discovery motions will be denied as the information requested would not have helped plaintiff in opposing defendant's Motion for Summary Judgment. First, plaintiff seeks phone records to show that he was unable to call his attorney; however, for the reasons stated above, Claim Four would fail even if plaintiff had been able to show that he was unable to call his attorney. Therefore, plaintiff's request for his phone records will be denied. Second, plaintiff seeks information regarding his inmate account to establish that it was frozen; however, that fact is undisputed, rendering the need for his inmate account records moot.

Third, plaintiff asks for copies of his disciplinary record from October 2014 to September 2015 to establish that he had no infractions during that time period; however, plaintiff's claims based on conditions of confinement fail even if plaintiff was not disciplined during that time period because the records requested could not establish that the defendants acted with deliberate indifference and/or that plaintiff suffered a harm. Thus, plaintiff's request for his disciplinary records will be denied. Fourth, plaintiff asks for video footage of his altercation with Officer Lubeke; however, this video would not change the fact that Claim One is time barred.

Accordingly, plaintiff's request for video of his altercation with Officer Lubeke will be denied. Finally, plaintiff seeks video footage to show that he was taken to the showers naked; however, as previously explained, Claim Two would fail even if plaintiff had proved that he was taken to the showers naked. For the foregoing reasons, plaintiff's discovery motions will be denied. Defendants' Motion to Quash or Stay Discovery and plaintiff's Motion to Challenge Defendants' Motion to Quash Subpoenas of Necessary Documents for Plaintiff will be denied as moot.

### B. Motions for Extension of Time

Plaintiff also filed a "Motion for Time Extension in Answering Defendants' Factless Summary Judgment" and a "Motion for Time Extension on [sic] Response to Defendants' Motion of Summary Judgment for the Following Reasons." [Dkt. Nos. 39, 43.] As plaintiff timely filed a response to defendants' Motion for Summary Judgment, these motions will be denied as moot.

### VI. Conclusion

Defendants have established that they are entitled to summary judgment as to Claims One through Four. Accordingly, defendant's Motion for Summary Judgment will be granted as to those claims and will be denied without prejudice as to Claim Five with leave to refile a motion for summary judgment on that claim. Finally, for the reasons stated above, plaintiff's pending discovery motions will be denied and the remaining pending motions will be denied as moot. An appropriate Order shall issue.

Entered this 23rd day of January 2017.
Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge